Good morning, your honors, and may it please the court. My name is Kara O'Brien. I'm a law student with Southwestern Law School's Appellate Litigation Clinic, appearing under the supervision of Gowri Ramachandran and on behalf of Appellant Michael Strausbaugh. With the court's permission, I will be reserving one minute of my time for my co-counsel Olivia Kim. Okay, if you'll just kind of keep an eye on the clock. We'll try to help you, but keep an eye on it. It goes down. That's the total. Thank you, your honor. Today, I will argue that prison officials infringed on Michael's fundamental right to access the court and due process rights when they interfered with his ability to respond in divorce proceedings. The right to defend oneself in a legal proceeding is a central part of the liberties protected by our Constitution. This court should reverse the district court order and remand for further proceedings because first, Michael has alleged plausible claims that federal officials violated his constitutional rights, and second, no immunity or lack of jurisdiction bars his claims against Mr. Bacon and Ms. Hiller in their individual and official capacities. If there's no immunity, what is the closest case to this? Yes, your honor. We have recognized a remedy. Well, your honor, this court in Silva v. D. Vittorio in 2001 found that individuals, that the First Amendment right to petition the court includes the right to file other civil actions in court with reasonable basis in law or fact. In that case, the court found that the even if individuals who are in confinement due to criminal convictions still have the opportunity to access the court in civil proceedings. Similarly, there is a Fifth Circuit case, Corpus v. Estelle, who has recognized that right as well because individuals still have the opportunity to defend themselves in a lawsuit. In this case, Rebecca, Michael's former wife, is the person that he attempted tirelessly to go through his unit manager and even the compound attorney to attempt to respond to the legal proceedings in this case to no avail. Let me ask you this, counsel. I certainly agree with you that the facts are pretty compelling as far as what actually happened, but we deal with jurisdictional issues, we deal with Bivens issues and the like. I gather you don't disagree, do you, that there is no potential Bivens claim here, right? Well, Your Honor, we would concede perhaps that there is a new context because per the Ziegler v. Abbasi decision this summer, this could differ in a meaningful way. However, that court remanded the due process Fifth Amendment claim to do the special factors analysis. And this court, if it chooses to reverse and remand Michael's case, the district court could similarly look at the special factors, counseling hesitation in that case as well. And what's different from Michael's case from Ziegler v. Abbasi is that the rank of the officers in this case, they are lower level employees. There's no national security concern like there was in Ziegler v. Abbasi. And similarly, the extent of judicial guidance in this case is another reason per the Silva case as well, excuse me, as the longstanding precedent of Bounds v. Smith, Wolfe v. McDonald, and Lewis v. Casey most recently that found that prisoners do have a constitutional right to access the court. You don't need a Bivens claim for injunctive relief, do you? No, Your Honor. We do not need it. No, Your Honor, an injunctive claim would not be under Bivens. However, the cause of action here for when Michael filed his divorce, when Michael attempted to file his complaint in Pennsylvania court for divorce, the prothonotary responded to him indicating that he needed to first serve Rebecca before he would be heard in that court, and a divorce decree was issued against him. He attempted to Okay, I just have a question. Don't the BOP policy give those unit managers a lot of discretion? I mean, the policy says that they may allow this contact, and don't they have a lot of discretion in terms of deciding whether or not the contact should be made? Yes, Your Honor, and it is a good policy for the prison officials to have that sort of discretion. But this case, unlike a case such as Turner v. Safley, there is no penological interest. There was no security risk in affording Michael the opportunity to respond to the divorce proceedings in this case, the act of interference from Ms. Hiller and Mr. Bacon prohibiting Michael from being able to defend himself in a legal proceeding would be enough to warrant a remedy from this court, and that would be either the injunctive relief against the individuals in their official capacity or for the seeking damages in their individual capacity. But you can only get damages in this case through Bivens, right? Yes, Your Honor. Although you conceded you weren't going to be able to go there unless we change the law. Did you concede that you have no Bivens claim? No, Your Honor, that the new context, this may be a new context, but under Zivlar v. Abbasi, the special factors analysis counseling hesitation would suggest to counsel that there is still a live Bivens claim in this case. Okay, just a moment. You submitted the divorce decree? Yes, Your Honor. So what kind of injunctive relief could you get now since the divorce is final? Yes, Your Honor. Well, Michael has already attempted to appeal the divorce decree in this case, and he would intend to do so as well. In fact, in Pennsylvania court, they have five years to file a motion to vacate or argue their case. Similarly, in the foreclosure proceedings where he lost the opportunity to fight for his real property, they have also preserved the filing date for that case as well. And those would be the damages that Michael would be seeking to pursue under the Bivens claim, Your Honor. How does that work? If she were never served, how has he preserved his right to appeal in connection with the divorce case in the state court? Yes, Your Honor. Well, per the excerpts on 137, the proto-notary noted that the original notice of appeal was preserved in Pennsylvania court. And similarly, in our briefing, we've provided. What does that mean? That the filing is on record in the court of Pennsylvania, Your Honor. Okay, I understand that. What I'm wrestling with is this. I understand that the court received the notice of appeal, docketed it, but the former spouse has not yet been served, right? Yes, Your Honor. This is all about. Correct, Your Honor. Okay, so if she hasn't been served, then he's not a party to the lawsuit, right? Well, she filed the initial proceedings, Your Honor. Okay, I guess you say he's a respondent. Yes, Your Honor. So in that instance, then, does he have an automatic right to appeal in Pennsylvania? I'm not sure, Your Honor. I'm not familiar if it's an automatic right to appeal. Or he could try to set it aside or something. Certainly. In any event, what you want is for him to be able to pursue whatever remedies he has. Yes, Your Honor. We would like him to be able to have the opportunity to pursue those remedies, provided that because of the active interference in this case, he was not able to defend himself in the divorce proceedings. And there were, it's reasonable to infer that there were marital assets involved in this case that was lost per the foreclosure case that is listed in the record. How are you going to get personal jurisdiction over the warden of the wife's prison? Yes, Your Honor. Well, there's personal jurisdiction over Ms. Hiller because the focus is on the relationship between the defendant, the form, state, and the claim. And in this case, but for Ms. Hiller's denial of Michael's opportunity to respond in the divorce proceedings and serve Rebecca, he would have not had this claim, he would not be pursuing this claim today, and a divorce decree would not have been issued against him without his opportunity to be heard. But that still doesn't answer the problem under Walden or Axiom Foods, does it? Well, Your Honor, the way that Walden versus Fiore focused on the defendant or, excuse me, the plaintiffs in that case was that they could move around, and so presumably there was a policy concern as to whether or not they could sue them in any state. In this case, Michael is going to remain in Arizona, and Ms. Hiller was aware that her actions would impact him there. Your Honors, I'm going to reserve the rest of my time for my co-counsel. Thank you very much. Good morning. Good morning. Good morning, Your Honors. Good morning. May it please the Court, my name is Catherine Foss, and I represent Mr. Bacon and Ms. Hiller and the United States by proxy in this action. While there are any number of issues raised by appellants in their brief, the critical issue that can resolve this case cleanly on all levels is that of qualified immunity. It asks, was there clearly established law by the Supreme Court, by the Ninth Circuit, that would put these defendants on notice that their actions in applying a BOP regulation, it's been consistently upheld by the courts, with advice from legal counsel, by following that regulation that they would be violating Mr. Stroudsbaugh's constitutional rights? And the answer is no. That only applies, does it not, in a Bivens situation. It doesn't apply in an equitable situation, does it? Well, in this action, Mr. Stroudsbaugh sought Bivens relief. That's specifically his claim that he put up. Understood. And the district court dismissed that. And our question here, of course, we have to deal with the practicality that, although the appellant initially, because he's pro se, wrote out in their official capacity, later on he used a form that didn't permit that to be included. But the reality is if he's able to plead equitable relief, you don't have a situation where there is qualified immunity, right? It doesn't apply here. That's true. And if Mr. Stroudsbaugh wanted to seek an official capacity action, he could use the procedures available under the APA, as suggested in Salida. But here, this is not What procedures are you talking about? Under the Administrative Procedures Act, he could pursue a claim if he is alleging that the policy itself is unconstitutional. But admittedly, the law is He wants to get in and defend a divorce proceeding. How does challenging the regulation help him with that? Well, as this court has previously suggested, an action in an official capacity is really against the Bureau of Prisons, not against these individual defendants. And in that way, there is that waiver of sovereign immunity in the Administrative Procedures Act, which would allow him to pursue that action. But here, after the court, in their first screening order, dismissed his claim, he did not replead later and had it under Bivens. And Bivens does not provide, as Salida suggests, for injunctive or other equitable relief. And as this court noted in its earlier questions, there's also an ongoing question of whether there is any injunctive relief to be had at this point in time, especially with the divorce decree. Did the district court explain to him what he he was pro se, right? Yes. That he would have to replead? The court granted, it dismissed his claims with the leave to amend, and he filed three different amendments at times. But his action was primarily seeking a Bivens right, and the court construed it as a First Amendment claim for right to petition the courts. And that's where it left it. Let's just say that we believe that he could, indeed should, either have his pleading treated ab initio as a plea against these folks in their official capacity or we send it back to the district court to permit him to amend to more fully allege that. What could an injunction do in this case? Let's say he pursued that. What remedy, if any, would that give to him in connection with his divorce action? I would submit that it would not provide him with the remedy inasmuch as the divorce decree has already been entered. This is also a case where That's all a matter of Pennsylvania law, isn't it? It is a matter of Pennsylvania law. But importantly in this case, appellants make it out to be that he had no opportunity to be heard in this divorce scenario. But that's not true. As provided in the excerpts of record that he attached, Excerpt 34, it reviews his filing that says that his motion to dismiss the divorce action is denied. These other motions he made were denied. It was not simply a matter of she filed something, he couldn't respond at all because of this service issue. It considered his filings and denied them. And then she was able to successfully get the divorce action. Why did it deny him? Was it because he hadn't served her? Or was there some other matter pertinent to Pennsylvania law that was the basis of the denial? The court did not explain in full what its basis was, but it denied all of his motions and then went on to say in the future the parties cannot get a divorce decree without complying with these service matters. But it didn't suggest that his motions were denied for failure of service. Well, his prior when He can't get any relief without serving her. Isn't that essentially the bottom line? When Mr. and Mrs. Strasbaugh were serving in Adams County, they were co-defendants in their criminal case. They were able to serve the papers. So those prior motions that he had filed had been served. So there wouldn't have been an issue in any event. But the claim that he's making to have this divorce go away and to contest the divorce was effectively considered and rejected by the court, irrespective of any service issue. Including the property issues? The property issue went up. There was a lower court foreclosure, and it went up on appeal. The appeal was considered. There's an opinion that's cited in the record. And the later issue was that he filed a petition for cert, essentially, to the Supreme Court of Pennsylvania, which is a discretionary court. And there they noted a number of problems, not just with service, but also with the contents of the notice of appeal and transcripts and whatnot, and also said you should serve Rebecca Strasbaugh, even though she hasn't appeared in this action. So basically, it's the government's position that the appellate in this case has already had the remedy that he seeks, i.e., to serve his ex-wife and to have issues related to his divorce, such as property, considered by the Pennsylvania courts. Is that right? That is our opinion. I mean, also importantly, as with regard to the property issues, appellants have suggested that there are marital assets that could have been distributed differently, but that's also inconsistent with the sort of fundamental purpose of this case, that he's appearing IFP and that he shouldn't be forced to serve people using his own dollars. If it is an issue of marital assets, that's kind of the issue there. But he hasn't been able to serve her, has he? At least as to this post-divorce action, no, he has not been able to serve her. But those issues at the time that Ms. Hiller considered the request, the divorce decree had already been entered. And in there, the BOP officials, all the more reason than qualified immunity, they're faced with a situation where the divorce decree has already been entered. These are co-defendants. These are people involved in sex offender management programs. There's a number of legitimate penological objectives for why they should follow this regulation, particularly after consulting with legal counsel who pointed them to this directive. So the Pennsylvania court, from your perspective, felt that the former Mrs. Strasbaugh had served the appellant in this case, and there was a divorce decree entered. Basically, the government views this as, in effect, a collateral attack on a state judgment of divorce? Yes, Your Honor. And ultimately, they point out this five-year period to set aside a judgment. They would have to meet the very high standard for extrinsic fraud in that situation. And as to the foreclosure action, they would have to prove that he would have succeeded on a petition for cert where the intermediate court effectively rejected all of his arguments in full. So there's very little to suggest that he would be able to obtain any sort of relief. Were he able to serve her in the future? And as to injunctive relief as well. The PLRA also specifically provides for that injunctive relief for prisoners only be as narrow and tailored as possible. So proceeding in that manner would also require that the court condition that and confine that to really effectively give him any sort of rights. But I submit there's also no constitutional violation that would warrant injunctive relief in any event because they were compliant with this regulation that has been upheld, and there's no requirement that BOP officials ---- They have an unlimited discretion? Is that the position? There's no allegation in this case, Your Honor, that they were acting with improper purposes or retaliating against them. It's simply that the BOP is not required to affirmatively assist prisoners with service. And this is not a case involving conditions of confinement or a case involving a criminal appeal, which most of the case law cited by appellants goes to that point. This is specifically a civil action divorced from any sort of prison behavior. And, indeed, even in those cases, the civil rights cases, it is the court which orders the marshals to do the service and not that the BOP is doing the service in those cases. Other questions by my colleague? Thank you very much. Thank you. Well, let's hear everybody. We've got a different person arguing now, right? We're going to give the students a little more time than we usually do here because we know this is an important participation, so welcome. Good morning. Good morning, Your Honors, and may it please the Court. My name is Olivia Kim, supervised by Gowri Ramachandran on behalf of the appellant. Your Honors, Michael needs an injunction in this case because there is a continuing violation and Bacon and Hiller did not revise their standards. Let's talk about that injunction, okay? What exactly would the injunction say, if you could write it, to your satisfaction? We would request that the injunction state that any unit managers not be able to forbid Michael from serving papers on Rebecca Strasbaugh for any civil actions that he may file. Okay, so you think that he was stopped and that was the problem. I thought he had also an issue that he didn't have the money to affect the service through private persons, right? Yes. So I'm confused then. The injunction would say that the BOP officials should not stop him from serving her. You heard from your opposing counsel that he was already named in, presumably served, in the divorce action and it went forward under Pennsylvania law. So I guess if we did it your way, they didn't stop him, they just stood out of the way. How does that help him? What relief does that give to him, even if you won that? Yes, Your Honor. We would also request that he be provided with a reasonable means to serve Rebecca through the BOP mailing system because they weren't ultimately trying to stop him from serving Rebecca but forcing him to use the U.S. Marshal's office, which he did not have the funds to pay for. Don't you have the issue we talked about earlier under Waldo versus Fiore and our Axiom case? How's their jurisdiction in this case? She specifically sent e-mails to Mr. Bacon knowing that she would be preventing Michael from serving Rebecca Strassbaum and therefore she targeted her actions. I understand that, but the problem is, you know what I'm talking about, specific personal jurisdiction? How does that satisfy the constitutional requirements set forth by the Supreme Court and our court in connection with specific personal jurisdiction? Sending an e-mail is not enough. Right, but she sent an e-mail arbitrarily using her discretion to forbid him from responding to the divorce case, which was against his fundamental rights. Okay, but we're wrestling with this jurisdictional issue here. An inconvenience, perhaps, but one we have to deal with. How do you get jurisdiction over this BOP official? Where is the specific personal jurisdiction under the Constitution? She targeted her actions at Arizona because she knew that Michael Strassbaum was confined in Arizona at the time that she denied permission and knew that the harm would be felt by Michael in Arizona. But, again, if you look at Walden, you look at Axiom, it isn't what happened generally with respect to him, it's with respect to the state. I struggle with how you satisfy that requirement. Right. Help me with that if you can. Yes. Michael was under the supervision of Mr. Bacon and not Ms. Hiller, and she specifically sent an e-mail to Mr. Bacon to forbid Michael from corresponding with Rebecca. Questions by my colleagues? I think we're all set. Thank you very much. Thank you, Your Honor. Thanks especially to our law student advocates today. Thank you very much. Very nice job by both of you. You too, of course. But we thank you all. The case just argued is submitted. And we want you law students to know that win, lose, or draw, we're very grateful for your participation. And everybody that comes here to argue gives your client and the system an opportunity to deal with challenges. One of the wonderful things about our system is we have due process. We don't have to fight out our requirements in the street. We can come to the court. We can present our ideas, our issues, and they get resolved in a peaceful manner. And you're an important part of that process. So good job all.
judges: Schroeder, M. Smith, Drain